UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOQUETTE NAGENE PETERSON,

    Plaintiff,                                      Civil Action No. 13-CV-14818

vs.                                            HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT and**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the Court on cross motions for summary judgment [docket entries 9 and 17]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge a final decision denying her applications for Social Security disability insurance benefits and Supplemental Security Income. Defendant, by decision of an Administrative Law Judge ("ALJ") in August 2012, found that plaintiff is not disabled because she can perform a limited range of light-level work with a sit/stand option. This became defendant's final decision when the Appeals Council declined plaintiff's request for review.

Under § 405(g) the issue is whether defendant's decision in this matter is supported by substantial evidence, which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938). In making this determination the Court does not review the matter de novo,

and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence also would have supported a contrary decision and even if the Court may have decided the case differently in the first instance. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 396 (6th Cir. 2014).

The medical evidence in this case has been completely summarized in the ALJ's decision and in the parties' briefs. In short, plaintiff claims she has been disabled since January 2010 (Tr. 96, 102) due to breathing difficulties, back pain, a heart condition, and depression and anxiety (Tr. 41, 156). The ALJ found that plaintiff's severe impairments are "lumbar spine degenerative disc disease; atrial fibrillation; chronic obstructive pulmonary disease; depression; and anxiety with agoraphobia" (Tr. 17). Plaintiff's other impairment, headaches, were found to be non-severe. *Id.* The ALJ found that although plaintiff cannot perform her past work, she has the residual functional capacity to perform a limited range of light work with a sit/stand option. A vocational expert ("VE") testified to the existence in the national and regional economy of several thousand jobs in the areas of assembly and inspection that a person such as plaintiff could perform.

In her summary judgment motion, plaintiff does not challenge the ALJ's decision as it relates to her physical impairments. She appears to concede that she is physically capable of performing light-level work with a sit/stand option. Rather, plaintiff's only criticism of defendant's decision is that the ALJ failed to adopt two specific restrictions contained within the mental residual functional capacity ("RFC") assessment of Dr. Robert Estock, who evaluated plaintiff, apparently based on a limited review of her medical records, for the state disability determination service in May 2011 (Tr. 293-96). Dr. Estock checked various boxes indicating that plaintiff is "not significantly" or "moderately" limited in areas of understanding, memory, "sustained concentration

and persistence," social interaction, and adaptation (Tr. 293-94). He then concluded with the following narrative:

> The claimant can understand, remember and complete short simple 1-2 step tasks, but not those that are longer or more detailed. The claimant can learn and remember a simple work routine if provided sufficient rehearsal. The claimant can follow simple directions in order to find locations and complete tasks. The claimant can maintain attention sufficiently to complete simple 1-to 2 step tasks for periods of at least 2 hours, without the need for special supervision or extra rest periods. The claimant may be able to complete more complex tasks if they are broken down into smaller, simpler sections to be completed. The claimant appears able to complete 8 hour workdays, provided all customary breaks from work are provided.
>
> **The claimant needs a flexible daily schedule.** The claimant needs a well spaced work setting. The claimant will benefit from supportive verbal reminders to stay on task. The claimant can make simple, short term work related decisions, but is likely to have a harder time with decisions that are more complex or long term. **The claimant is likely to miss 1-2 days of work per month due to psychiatric signs and symptoms**, but otherwise can maintain work attendance without exceptions. The claimant can tolerate non intense interaction with members of the general public. The claimant can ask questions and request assistance.
>
> The claimant can tolerate casual, non intense interaction with coworkers and supervisors. The claimant is likely to do best working with a small number of familiar coworkers. Supervision and criticism should be given in a manner that is supportive and non threatening. The claimant can maintain basic[] standards of personal hygiene and grooming. The claimant can set[] simple, short term work related goals that are realistic but may need assistance with those that are more complex or long term[]. Changes in the work environment or expectations should be infrequent and introduced gradually. The claimant can maintain basic[] awareness of safety issues in the work place. The claimant can use public transportation to get to work.

(Tr. 295) (emphasis added). Plaintiff argues that the ALJ should have adopted the highlighted restrictions. She notes the vocational expert ("VE") testified that both restrictions would prevent

plaintiff from working.[1]

The Court rejects this argument because the ALJ is not required to adopt all findings, restrictions and recommendations of every "medical source" in the record. Rather, under the circumstances of this case, where the burden has shifted to defendant to prove the existence of jobs which plaintiff can perform,[2] and where nonexertional impairments take plaintiff outside of the medical-vocational guidelines, defendant may meet its burden by eliciting VE testimony that is "given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects. . . ." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The ALJ was not required to adopt Dr. Estock's limitations regarding plaintiff's needs for a flexible daily schedule and to miss one to two days of work per month because they are not supported by any evidence in the record. Plaintiff points to no evidence that supports these

---

[1] When asked about the effect of needing "a flexible schedule," the VE testified:

> A. I guess I'm note sure what you mean by flexible schedule.
> Q. Perhaps being able to pick between one week and the next week whether she'll work afternoons or days.
> A. I think taken in combination work would be precluded.
> Q. Okay. What precludes the –
> A. That flexible schedule thing, I mean that – of the Claimant's picking and choosing would preclude work.

(Tr. 47.) The VE also indicated that "if the individual is likely to miss one to two days of work per month because of the psychiatric signs and symptoms," this would preclude work (Tr. 48-49).

[2] The ALJ found that plaintiff cannot perform her past jobs as a cashier, fast food worker, or waitress because the exertional demands of these jobs exceed plaintiff's RFC (Tr. 25). "If the plaintiff cannot perform his past work, the burden shifts to the Commissioner to show that, considering the plaintiff's age, education, work experience, and residual functional capacity, the plaintiff is capable of performing other work that is available in significant numbers in the national economy." *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 677 (6th Cir. 2013) (footnote omitted).

restrictions and the Court has found none, despite having independently reviewed every page of the administrative record.

As the ALJ noted, plaintiff has "described engaging in an array of daily activities. These activities include working as a waitress and hostess, caring for her granddaughter, driving occasionally, grocery shopping, preparing meals, washing dishes, housecleaning, sweeping, taking the trash out, doing laundry, and caring for her personal hygiene" (Tr. 19).

A psychiatrist who examined plaintiff in February 2010, Dr. Patel, diagnosed depression and panic attacks with agoraphobia and he recommended medications (Tr. 221-22). Follow-up appointments in June 2011 (Tr. 312), September 2011 (Tr. 311), December 2011 (Tr. 316), and March 2012 (Tr. 325) indicate plaintiff was doing well or "okay." Nothing in Dr. Patel's reports confirms Dr. Estock's restrictions.

A psychologist who examined plaintiff in April 2011, Dr. Stewart, also diagnosed panic disorder with agoraphobia, but he indicated plaintiff's concentration is in the normal range, her abstraction abilities are unimpaired, her memory is within functional limits, and her intellectual functioning appeared to be in the average range (Tr. 260). Dr. Stewart found that plaintiff has "the interpersonal skills required to related to others in a work setting" and can "sustain the attention needed to do repetitive tasks" (Tr. 261). Again, nothing in Dr. Stewart's report confirms Dr. Estock's restrictions.[3]

Plaintiff worked part-time as a waitress at Waffle House from March 2009 to March 2011 (Tr. 16, 106-109, 130, 141, 167, 178). In her January 26, 2011, disability report, plaintiff

---

[3] It appears that Dr. Stewart's report is the only evidence regarding plaintiff's mental health that Dr. Estock reviewed (Tr. 291).

indicated she was still working and that her impairments had not caused her to make changes in her work activity, e.g., job duties or hours (Tr. 156). The same month her district manager likewise reported that plaintiff "always" reported to work on time, had a satisfactory attendance record, did not need frequent breaks, worked well with other employees, and responded appropriately to changes in work (Tr. 174-75).

In short, there is simply no support in the record for Dr. Estock's restrictions regarding plaintiff's need for a flexible schedule and to miss one to two days per month "due to psychiatric signs and symptoms." Therefore, the ALJ committed no error by declining to include these restrictions in his hypothetical questions to the VE. Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted.

S/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: February 20, 2015
       Detroit, Michigan

6